*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re CROSS, Minors.

UNPUBLISHED
November 10, 2022

No. 360514
Oakland Circuit Court
Family Division
LC No. 2019-872057-NA

Before: GARRETT, P.J., and O'BRIEN and REDFORD, JJ.

PER CURIAM.

Respondent-mother appeals as of right the trial court's order terminating her parental rights to the minor children, MAC and DKC, under MCL 712A.19b(3)(c)(*i*), (g), and (j). For the reasons set forth in this opinion, we affirm.

## I. FACTUAL BACKGROUND

In April 2019, the Department of Health and Human Services (DHHS) petitioned for the removal of respondent's then four-month-old child, MAC, from her care and temporary wardship because respondent had been involuntarily hospitalized for psychiatric care. Respondent was also pregnant with DKC and involved in a physically abusive relationship with DKC's putative father. Respondent pleaded no contest to the allegations of the petition on June 4, 2019. The trial court authorized the petition and took jurisdiction over MAC and later also took jurisdiction over DKC following that child's birth. The principle issues that led to the court's taking jurisdiction over the children were respondent's struggles with her mental health, including her failure to consistently take her medication, her inability to maintain suitable housing, an inability to parent the children in an effective and healthy way, and her failure to avoid unhealthy and abusive relationships with men. During the pendency of the proceedings, respondent was hospitalized for psychiatric treatment at least five or six times, did not consistently take her prescribed medication, refused to participate in domestic violence services, failed to consistently attend visitation with the children, and failed to maintain stable housing. In April 2021, DHHS filed a supplemental petition for termination of respondent's parental rights.

Following a two-day hearing in August and November 2021, the trial court found that clear and convincing evidence established statutory grounds for termination under MCL 712A.19b(3)(c)(*i*), (g), and (j). After a hearing in February 2022, the trial court found that

termination of respondent's parental rights served the children's best interests. Accordingly, the court terminated respondent's parental rights to the children. This appeal followed.

## II. ANALYSIS

### A. STATUTORY GROUNDS

Respondent first argues that the trial court clearly erred by finding that clear and convincing evidence supported the cited statutory grounds for termination, primarily because DHHS failed to meet its statutory obligation to make reasonable efforts toward reunification. We disagree.

We review for clear error a trial court's determination that clear and convincing evidence supports a statutory ground for termination of parental rights. *In re Sanborn*, 337 Mich App 252, 272; 976 NW2d 44 (2021). " 'A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses.' " *Id*. at 273, quoting *In re BZ*, 264 Mich App 286, 296-297; 690 NW2d 505 (2004). A trial court's decision regarding reasonable efforts is also reviewed for clear error. *In re Sanborn*, 337 Mich App at 258.

The trial court terminated respondent's parental rights under MCL 712A.19b(3)(c)(*i*), (g), and (j), which permit termination of her parental rights if clear and convincing evidence established:

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:
>
> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.
>
> * * *
>
> (g) The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.
>
> * * *
>
> (j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

"A parent's failure to participate in and benefit from a service plan is evidence that the parent will not be able to provide a child proper care and custody." *In re White*, 303 Mich App 701, 710; 846 NW2d 61 (2014). Similarly, if a parent does not comply with the requirements of

their parent-agency treatment plan, this is evidence that the children will be harmed if returned to the parent's home. *Id*.

The court entered the initial dispositional order for MAC on June 4, 2019, and entered the initial dispositional order for DKC on July 20, 2020. Respondent does not seriously dispute that the record supports the trial court's finding that the issues that led to both children being brought into care, specifically, respondent's mental health issues, her ongoing housing struggles, her relationships with violent and physically abusive men, and her inability to parent the children in a healthy manner, all continued to exist at the time of the statutory-grounds hearing. Accordingly, the trial court did not clearly err by finding that clear and convincing evidence established statutory grounds for termination of respondent's parental rights under MCL 712A.19b(3)(c)(*i*). Further, clear and convincing evidence established respondent's failure to comply with the terms of her parent-agency treatment plan which required her to secure suitable and safe housing, consistently participate in therapy, consistently take her prescribed medication for her mental health, regularly attend visitation with her children, and participate in domestic violence classes. The evidence demonstrated that she cannot provide proper care and custody, and that the children would be at risk of harm if returned to her care. *In re White*, 303 Mich App at 710.

Respondent's principle argument on appeal is that termination of her parental rights was not justified because petitioner did not meet its statutory obligation to make reasonable efforts toward reunification by not tailoring services to accommodate her mental health issues. In *In re Hicks/Brown*, 500 Mich 79, 83; 893 NW2d 637 (2017), our Supreme Court explained that "[b]efore a court may enter an order terminating parental rights, Michigan's Probate Code, MCL 710.21 *et seq*., requires a finding that [DHHS] has made reasonable efforts at family reunification." The Court further stated that "efforts at reunification cannot be reasonable under the Probate Code unless the Department modifies its services as reasonably necessary to accommodate a parent's disability." *Id*. at 90. The Court explained:

> Under Michigan's Probate Code, the Department has an affirmative duty to make reasonable efforts to reunify a family before seeking termination of parental rights. MCL 712A.18f(3)(b) and (c); MCL 712A.19a(2). As part of these reasonable efforts, the Department must create a service plan outlining the steps that both it and the parent will take to rectify the issues that led to court involvement and to achieve reunification. MCL 712A.18f(3)(d) (stating that the service plan shall include a "[s]chedule of services to be provided to the parent . . . to facilitate the child's return to his or her home").

> The Department also has obligations under the [Americans with Disabilities Act (ADA), 42 USC 12101 *et seq*.] that dovetail with its obligations under the Probate Code. Title II of the ADA requires that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 USC 12132. Public entities, such as the Department, must make "reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless . . . the modifications would

-3-

fundamentally alter . . . the service" provided. 28 CFR 35.130(b)(7) (2016). [*In re Hicks/Brown*, 500 Mich at 85-86.]

On appeal, respondent asserts that she should have been provided with rehabilitative services, or the assistance of a parent-partner for a longer period of time, or assistance with securing federal Section 8 housing assistance. While respondent now challenges the manner in which DHHS provided services, she does not address the key fact that she did not consistently participate in her individual therapy and other services as required by her parent-agency treatment plan, that she failed to consistently take her medication, and that she refused to comply with the court's repeated directive that she participate in domestic violence services and continued to engage in relationships with abusive men who were dangerous to herself and her children.

Respondent's caseworker, Alison Desmone, testified how she went above and beyond in her efforts to accommodate respondent, including by spending her own money, providing respondent with baby clothes and supplies, meeting with respondent on her own time, and transporting her wherever she needed to go to comply with services. Desmone also explained that respondent was afforded additional time and opportunity to benefit from services in recognition of her mental health issues. The trial court noted that it had not encountered a case in which a caseworker had gone to the lengths that Desmone had gone to support respondent in every way possible. The record does not support respondent's argument that DHHS failed to comply with its statutory obligation to make reasonable efforts to reunify respondent with her children. The record supports the trial court's decision that clear and convincing evidence established statutory grounds for termination.

## B. BEST INTERESTS

Respondent also argues that the trial court erred by finding that termination of her parental rights served the children's best interests. We disagree.

"Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012). "We review for clear error the trial court's determination regarding the children's best interests." *In re Rippy*, 330 Mich App 350, 360; 948 NW2d 131 (2019) (quotation marks and citation omitted). MCL 712A.19b(5) provides:

> If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made.

In *In re Rippy*, 330 Mich App at 360, this Court observed:

> The trial court may consider a number of factors when determining whether termination of a respondent's parental rights is in the child's best interests, including
>
>> the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the

advantages of a foster home over the parent's home. The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's wellbeing while in care, and the possibility of adoption. [Quotation marks and citations omitted.]

In this case, the record establishes that respondent continued struggling with her mental health issues and maintaining suitable housing. Moreover, she failed to consistently attend visitation and had not demonstrated an ability to parent the children in a healthy and effective manner. Both children were developmentally delayed and have special needs that respondent could not meet. Conversely, the children were thriving in their foster care placement, had both bonded closely with their foster parents and foster siblings, and the foster parents were committed to meeting the children's special needs on a long-term basis. The trial court considered that respondent had a bond with MAC, but found that the children's needs for stability and permanence outweighed the bond between respondent and the child. The trial court properly considered the applicable factors and it did not clearly err by finding that a preponderance of the evidence established that the best interests of the children would be served by terminating respondent's parental rights.

Affirmed.

/s/ Kristina Robinson Garrett
/s/ Colleen A. O'Brien
/s/ James Robert Redford